Good morning. You can be seated. Final case. Five. Mr McCoy. May it please the court. Counsel. My name is Christopher McCoy from the Office of the State Appellate Defender, and I'm representing the defendant Myron Dawn. Today, I would like to begin by focusing on the crucial moment in this case, and that's the moment when the police officers into the basement for at that moment, there was an applicable exception to the warrant requirement. Then there is no Fourth Amendment problem here. But if that entry into the basement was not justified, then the evidence found in the basement must be suppressed and two possible justifications have been raised in this case, and their first consent and second exigent circumstances. However, neither of those two exceptions apply here. Consent being derived from the fact that the homeowner said you can come in for a moment. Yes, um, wanted on the defendant's sister gave a limited consent to consent to enter the house. But this consent did not encompass general search of the house or an entry into the base. The state is not disputing that, are they? In its brief, the state has has not argued that there was consent to go into the basement. Yes, exactly. I think that's clear that there was no consent. But weren't there exigent circumstances? No, Your Honor. And in this case, the exigent circumstances the state focuses on is the possible destruction of evidence or disposing drugs. The mere possibility that drugs are present is not enough to establish automatically established exigent circumstances. Officers need a particular reason to think that the drugs would be destroyed. And in this case, they have the threshold. Particular reason to believe there's drugs in the house to begin with. Exactly. Otherwise, they don't get to the basement at all. Exactly. And in this case, they don't. They don't have that. They have a very vague tip. That tip comes from an unnamed alderman who supposedly tells the informs the police that there's possible drug sales coming from this house. There's a lot of unknowns in that tip. There's nothing mentioning the defendant in that tip. There's nothing saying that the drugs are particularly coming from the basement, as would be relevant here. There's no information that would be kept near a toilet or bathroom. Was there any information as to whether or not the supplier was a male or female? No, Your Honor. Absolutely no information about who was selling these drugs. And it's also unknown if these drugs are still in this house anymore. But there's only the two adults, right? The defendant and his sister at the time when the police arrived. There's also a 12-year-old girl. When I say two adults, most drug dealers are usually adults, but the initial tip is from an alderman, even though he's unnamed, you'd consider that to be a reliable source, correct? Well, assuming the alderman is not the one personally purchasing the drugs, he's getting information from someone else who may in turn be getting it from someone else. I mean, we really don't know. Well, that's a third part of your saying, at best. At least. In any event, we don't know the basis of the alderman's knowledge, do we? Not at all. There's very little information about this. I mean, was this recent? Well, you know, search and seizure cases get into this. Observations? Had this been an observation from a week ago, a month ago? I mean, that would all bear on whether or not there was a reasonable belief that drugs were in the house. Exactly. And we don't have that information here. Well, the sister did corroborate or confirm that someone had stopped by asking to buy or purchase marijuana, correct? Yes, but that occurs after this illegal entry to the basement has already happened. The officers immediately go, the three officers besides Officer Rafet, immediately go downstairs to the basement after they come in the house. So that would not justify, this later knowledge wouldn't justify their earlier entry to the basement. And going back to the timing as well, the, again, the police officers went to the house around 9 o'clock at night. They said that they received a tip at least one day prior. In fact, they couldn't really remember when they got the tip. And we don't know what's even probably more important. We don't know how long it took this information to get from the original tipster to the police officers in this case. And that bears on the issue of existing circumstances, obviously, does it not? Exactly. Let me ask you sort of a threshold question before you dive into your argument. Is it your position, are you strongly opposing the idea that the other officers had the right to enter the house? No, no. It was, Juanda testified that... I don't think your case turns on that anyway. No, it doesn't. Even if they had permission to enter, they didn't have permission to enter the basement. Well, if they had permission to enter, and then when they say we came to talk to you about possible drug sales, and immediately the defendant turns and starts walking down the basement. So they have permission to be in the house. At that point, don't they have, aren't there exigent circumstances that this individual immediately creeps off when he hears them talking about drugs? No, Your Honor. Again, I go back to the tip. There's no information that the defendant is the one selling the drugs. There's no information that the basement's where they kept. And it seems to be a reasonable time for him to have left. Now, he's not... Or a convenient time for him. He's not running. He's not fleeing away. The officers had begun talking to Juanda, who had now come to the door. And the testimony was it was a small landing. All six of them could not have stood together in the same place. Somebody had to leave. Well, Juanda could have said, which she did not say, don't go down there. Yes, but the lack... She did not say that. But the lack of an objection is not consent. Police have to operate within the consent that they've been given. And their consent was to enter the home to talk about this... But also, didn't the officers themselves have now talked to you for a moment? Wasn't the words for a moment involved? I believe that's what the officer said. And Juanda's consent was no more than that, to please come in. I'd like to talk to you about this. So there was no discussion about going to the rest of the house? No, no. There's absolutely no discussion. Are there any cases... You know, my colleagues raise a good point. Any cases that stand for the proposition that where the officers arrive at a house on a suspicion of drug activity, nobody disputes that, that if anybody, if any of the occupants in the house start leaving the room where the officers are at, that they have the right to follow them throughout the house? I have found no case that stands for that. A similar example with slightly different facts is People v. Dale, in which police officers receive a tip that drugs are being sold from a motel room. They get consent to enter the motel room and then ask the defendant for consent to search. When they begin searching a certain area of the room, the defendant suddenly withdraws his consent. So there we have a tip and some quasi-suspicious behavior, which I would argue is more suspicious than Mr. Don's behavior, just walking down the stairs in this case. And still, in People v. Dale, the court held that there were no exigent circumstances. You know, a basement is not typically considered by most people to be a private area of a home. It's more of a common area in a home. People, generally speaking, if they do have a bedroom, for example, in a basement, it will be closed off. Isn't that something that should go into our analysis, how the police officers view the invitation? It's an invitation into the home to talk about drugs, drug activity. Here's an adult walking away from the conversation, and they're not, quote-unquote, pursuing him, but they're basically saying, hey, I'd like to talk to you as well. Is that an unreasonable thing for a police officer to do, to say, hey, we'd like to talk to you as well? It's unreasonable to follow that person into an area of the home which they've not been given consent to. Again, going back to the fact that the consent to enter was to talk with Quanda. But she didn't say, let's talk in the living room or come on into the family room. But she turns, the way this house is situated is, as I said, there's a small landing where the door opens to, and then there's a half flight of stairs up to the kitchen living room area,  and after she says, please come in, I'd like to talk to you about this, she then goes up the half flight of stairs to the kitchen. So it's unreasonable to think that going into the basement is going to help the officers talk to Quanda, who's in the kitchen. There's no reason for that to help. Perhaps a helpful example would be if the officers, instead of the police, were traveling salesmen, and Quanda had consented to talk to them about whatever product they had been reselling, and suddenly three of them go into the basement. Well, surely they didn't have consent to enter the basement, and that's the same thing with police officers here. In the home, the police officer's authority is limited by the consent they gave. And the lack of an objection does not expand this consent in any way. And so, again, we're not giving consent to enter the basement. But if they had not been given, or had they been given consent to enter the home, what is your position then, again, with respect to exigent circumstances? Exigent circumstances don't apply. Again, here there's not even, hypothetically, if the officers could freeze time at the moment they see Mr. Don turn to go downstairs to the basement, and they could go in front of a judge with that information, that's surely not enough for probable cause, because this tip is very vague. And certainly, they can't do more without a warrant than they'd be able to do with a warrant. And here, again, this mere movement away from the police officers, or refusal to speak with the police officers, can't be equivalent to exigent circumstances. If the state's argument is taken to its logical end, then police officers could automatically turn what should be consensual encounters into Terry stops by merely mentioning drugs. And for example, if the officers mention drugs, the defendant would then, if we accept the state's argument, would then have to stay and talk to the officer as long as the officer would like. Otherwise, merely walking away would give the officer exigent circumstances to follow the defendant. And surely that can't be the case. Surely, a person, a citizen must have the right to walk away to go about his business. And if it were not, there'd really be no reason to ever go get a warrant. Because if police going on a tip about drugs, if their mere presence creates these exigent circumstances, then what would be the reason for them ever to go before a judge and to get a search warrant? So in this case, exigent circumstances also do not apply. And if there are no further questions... The fact that they came with four officers is telling, isn't it? Well, I believe it's telling in the fact that there were no exigent circumstances. There's actually five officers. There's four officers in the house and one officer in the back. And the defendant wasn't going to escape. I mean, he's contained in the basement. There's no way he's going to get away or get a jump on these officers. How do they know that? They've got an officer in the back of the house. They have four officers on the top of the stairs. There's no way he's going to get out of that house. And if he comes up the stairs, they'll be right there to see him. Well, the state in the record in the briefs has never argued that the person walking in the basement was some dangerous person who was trying to escape. That's not the basis that they've argued for appalling this search and seizure, is it? No, no. The exigent circumstances relates to the suspicion of the trial. Yeah, the destruction of evidence. Any further questions? For these reasons, Mr. Don will respectfully request that this court reverse the trial court's order denying the motion to suppress. Thank you. Thank you, Mr. McCoy. Mr. Schmidt. Good morning, Your Honor. Good morning, counsel. May it please the court, my name is Matthew Schmidt, representing the state in this matter. Defense counsel correctly points out that the issue here is when the police enter the basement. He points out two kind of issues that grapple with the consent issue and the exigent circumstances issue. Why don't we tackle the consent issue first? That might be easier. It is not your position that Quanda consented to the officers to go into the basement by saying, you can come in and talk to me for a moment, is it? Your Honor, I know I didn't specifically address this in the brief. I have looked into it some more and I can discuss it if you'd like me to. If you're going to be arguing to us, don't. When somebody, the police knock on your door and they say, we can talk to you for a moment, they have the right to go all over the house. I'd like you to find me some cases that allows that. Well, Your Honor, I would argue that going into a basement isn't necessarily a search if you're following someone to talk to them. When I'm talking about the consent, I think the preliminary, clearly threshold issue is the scope of the consent when Quanda allows them to come in. Right. I mean, the case could turn on that. If you said, sure, come on in, you can look around, words that affect, look around, I think they've got a right to go all over the house. That isn't what happened here, is it? When they said, can we come in for a moment, she says, come on in, correct? She says it's only effective, come in, I'd like to talk to you. Was there any discussion at all about where in the residence they were going to be able to go? There was no specific discussion about that. However, she also did not limit her consent to say, you can come in, but you can only talk to me. You can come in, but only follow me into the kitchen. There was no implied or expressed limitation on that. Were they going to yell from the other room? Is that how their conversation was going to occur? No, Your Honor. However, as I said, I don't think there was no limitation placed on it. Well, she walked up and they went down. One officer followed her into the kitchen, the other three followed the defendant. Which we could characterize as a ruse to go into the basement. I think one could characterize it that way. However, I think when looking at the testimony, the fact, Mr. Shostak pointed out, that as soon as they mentioned illicit narcotics, the defendant's going down to the basement, kind of, I believe the word is slinking away, for lack of a better term. And they have, as you said, a fairly reliable tip that there was a tip from an alderman that there were illegal narcotics, and as soon as the illegal narcotics are mentioned, the defendant starts going down to the basement. Okay, so now we're metamorphosizing into the exigent circumstances. Let's nail down completely the consent. Do you have any cases that say, when the police knock on someone's door and say, can we talk to you for a moment, and the homeowner says yes, without the homeowner limiting where they go, the police have the right to go all over the house. Do you have any cases that remotely stand for that proposition? I do not have anything on that particular point, Your Honor. There's probably a good reason for that. Did she ever stop them from going down to the basement? No, Your Honor, she did not stop them. We know from her testimony that she saw them go down to the basement. She didn't say anything. She didn't go back and say, hey, don't go down there. She didn't stop speaking with the officer that she was currently speaking with. And I think one of the things we need to point out here is that if we follow defendant's logic to its logical extreme, do they have to have permission to go through the living room to talk to her in the kitchen? Do they have to have permission to go into a hallway? Well, no, but as my learned client pointed out, if they're going to have a conversation, she's in the kitchen, they're in the basement. So I think your strongest argument here is going to be whether or not exiting circumstances apply. I don't want to speak for anybody else, but I don't think you're going to win on the scope of a consent for them going to the basement. Boy, you're really ticking your hand, aren't you? I wouldn't be doing that, but I wanted to get to his strongest argument. Russell testified that the reason he followed the defendant into the basement was for safety reasons. Right, several officers testified. What were the safety concerns? What information did they have, did the police have, that the defendant may have been armed and or dangerous? They didn't have any specific information. I know there is some case law to the effect that drugs are kind of an inherently dangerous crime. That's a little more reason to think that someone may be particularly armed and dangerous. I believe the main concern was that he was going into a room where no one could see him and if everyone went to the kitchen, then he could possibly emerge from the basement with some sort of weapon. So general suspicion is enough about drug activity? If there's someone in a home that's suspected of drug activity, that ipso facto means that person may be dangerous? Is there a case that says that? I don't believe so. I'm seeing it in generalities. That is one of the factors to consider. However, in this case, I think the more pressing exigent circumstance would be the destruction of evidence. The fact that as soon as they mention narcotics, he goes down to the basement. That gives them a particular reason to think, since they have this tip, that drugs may be being disposed of while they're in another room completely and unable to see what the defendant is doing. Don't you have to have some threshold information? I see the logic in your point. Although I think we also probably can see there's no case that says when the police come to somebody's home under those circumstances, they have the right to follow the occupants all over the house if they leave the room. I'm not aware of a case that says all the occupants must stay in one room. So the circumstances have to be tied into some reasonable basis to believe or reasonable grounds to believe  or B, that the person they're following may be armed or dangerous or has a violent criminal record. And we don't seem to have that here. Or at least, can you point us where that evidence exists? Is this probable cause or is this a hunch? I'm going to address Justice Hudson's question for a moment. I think that I'm sorry, I'm blanking for a moment. Actually, it sort of ties into her question. What hunch allowed them to go into the basement? When you have a tip from a fairly reliable source, an alderman, someone with a fairly good standing in the community, I wouldn't imagine, and you have someone that walks away almost immediately when you mention illicit narcotics, go to a place where no one can see him, I think that that is beyond a hunch. It may not be probable cause, but you don't need probable cause. Probable cause is a factor. It's not the end-all, be-all. It's an array of things. Well, again, we have to keep looking at the basis of the knowledge and the information. He raises a very legitimate point. Can you have better evidence than you would have had for a search warrant? Do we know if the alderman got this tip a week ago, a month ago, a year ago? We don't know, do we? That's not in the record, Your Honor. I can't speak to that. Are you familiar with People v. Condon, Bernard Condon? It was a search warrant case where there was evidence of narcotics activity in a home and evidence that there were weapons in the home, but no specific information about the defendants themselves being armed. And the Illinois Supreme Court, I can't recall, I think, affirmed the suppression of the evidence because there was not enough information to relieve the knock-and-announce requirement. In other words, no evidence in circumstances where there was no sufficient evidence that the defendants were armed at the time of the entry. How is this case any different? I mean, you have a... Actually, this case is much weaker. There's no evidence at all of any firearms or weaponry in the home. Just a vague, vague tip that somebody, some person in the home, some unknown person, may be dealing drugs. Right, Your Honor, but I think there's a different set of circumstances when you're talking about knock-and-announce rule as opposed to... Exigent circumstances are exigent circumstances. They have to be independent of the entry. You've got to establish that, based upon what they had, the information they had at that time, they had exigent circumstances to believe either drugs are going to be destroyed or the defendant was armed and posed a safety issue for the police officers. I think that it's slightly different because they've already been inside the... But they're going now to someplace else that they haven't been invited into. Correct, Your Honor. Based upon the behavior of... Based upon this behavior, yeah. I think... Once you see someone going down into the basement, once you see someone going into another room that is a more present and substantial concern than just, okay, there are drugs and weapons in the house. They don't... For example, I think one of the main distinguishes between this and I think the case was People v. Wembley was the fact that in Wembley, in this case, the defendant doesn't see the officers. They don't know the officers are there. They don't know the officers are about to break down the door. So there's not really a particular reason to think that the defendants are going to be able to destroy the drugs in that time. Whereas here, the police open the door, they announce, they first say who they are and why they're there to the defendant and then the sister comes to the door and again they say who they are and why they're there and once they do that, the defendant leaves and goes down to the basement someplace they can't see and I think that is a distinguishing factor because you actually see someone going to quite possibly destroy those narcotics that are in the basement. Well, again, do you have any case that stands for the proposition that when you go there to investigate drug activity, the police have the right to follow the occupants anywhere in the house to prevent destruction of drugs or to protect themselves. Do you have any case law that stands for that proposition? There's no case law that specifically stands for that proposition. People v. Rogers is a case where police responded to a home invasion call and kind of walked around the house at first and then asked permission to search. Permission was denied and then they went through and did an inch by inch search of each room in the house and then found narcotics and the court distinguished between the walking around the house and the inch by inch search of every room. They didn't reach the walking around but I think there is a distinction between going into a room following someone and opening doors and looking under cushions and everything else. So I do think that distinction can be made. There is a case that kind of addresses it but there's nothing specifically on your point. Where do they find the drugs on the defendant in this case? The defendant... I'm sorry. I was kind of surprised. As long as you don't expect a demonstration, I'm okay with it. They asked the defendant if he was armed or any weapons on him and defendants, according to the  while saying I believe something like, how can I be armed? And then when he pulled up his pants, one of the officers who was sitting behind him noticed a suspicious package that fell next to his foot which was suspected cocaine. And then that gave them probable cause for the arrest which led to the search of the person which found more cocaine, marijuana, cigarettes and then the jacket which they gave him before taking him to the station also contained indicia of narcotics packaging. Anything further? Do you want to wrap up? Yes, thank you. So I think what we have here is there's a difference between consent to search and tear a room apart and consent to come in and talk to people that are in the room. And even if there is not, I think there are exigent circumstances here when you mention narcotics and see someone immediately leave once the narcotics are mentioned that creates a particular reason to think that drugs are being destroyed. For those reasons, we ask that you uphold the decision. Thank you. Mr. McCoy. On the issue of consent Judge Justice Hudson was asking for cases relating to it. I can point this case to its own decision in People v. Boheme where this court held that the failure to object to a search does not equal consent to a search. That same reasoning was applied in People v. Dale and People v. Balthazar. All those cases are in our brief in which this failure to object didn't expand the scope of the consent. And the state argues that there's a difference between an inch by inch search and general walking around, but still the officers are limited to the consent which they had. And the consent did not How about his position, your opponent's position with respect to safety for weapons? Well, notably I would point this court to the decision, the state's side, to not disbrief People v. Wembley in which there was a tip about a drug house and that in fact that there was and in fact in that case they saw the defendant holding drugs, yet that in and of itself is not enough to hold that there's some kind of dangerousness. But again, the state never argued officer safety as an issue, did it? No, not in its brief and not below. It's just a constantly changing rationale and it's because it does not fit into any exception. As Justice Burkett pointed out, there's nothing in the tip that the defendant was armed. They never saw weapons of any kind and at best this is just a hunch and attempt to expand the limited consent with which the officers entered the house. Other questions? Thank you. Thank you, gentlemen. Mr. Schmidt, Mr. McCoy, it's always a pleasure. Thanks for your arguments today. The court is adjourned for the day. A decision will be rendered in due course.